Filed 5/26/22  In re J.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.C. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E078287 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ2000563) |
| v. | OPINION |
| D.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Kelly L. Hansen, Judge. Conditionally reversed and remanded with directions.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

D.M. (mother) appeals the termination of her parental rights over her son, J.C. (Welf. and Inst. Code, §§ 300, subd. (b), 366.26, unlabeled statutory citations refer to this code.) She argues the judge erred in concluding the Riverside County Department of Public Social Services (the department) conducted a sufficient inquiry into J.C.'s Indian ancestry as required under the Indian Child Welfare Act (ICWA). We agree, and therefore conditionally reverse and remand with directions that the department complete its initial inquiry.

I.

FACTS

J.C. came to the department's attention when they received a referral alleging mother tested positive for marijuana, methamphetamine, and opiates at his birth. The department interviewed mother and J.C.'s father the same day, and both denied any Indian ancestry.

On November 20, 2020, the department placed J.C. in protective custody. Four days later the department filed a petition under section 300, subdivision (b), and a detention report. The department reported they couldn't identify any relative placements for J.C. after talking to the parents. Father said his relatives lived out-of-state and he had minimal contact with them. Father also said he was previously removed from his biological parents' care.

On November 25, 2020, both parents filed ICWA-020 forms (Judicial Council Forms, form ICWA-020 (ICWA-020)). Mother denied that any of the possible Indian statuses applied to her or J.C., and Father's form was apparently incomplete.

The same day Riverside County Superior Court Judge Judith C. Clark held a detention hearing. Both parents were present. Mother confirmed her ICWA-020 form indicated she wasn't aware of any Indian ancestry. Father also confirmed he didn't have any Indian ancestry that he knew of and gave the judge permission to complete his ICWA-020 form to reflect that. The judge ordered J.C. detained from his parents.

The department contacted maternal grandmother on November 30, 2020, regarding emergency placement. Maternal grandmother said she lived in a trailer on the same property as the parents. She told the department the trailer wasn't habitable due to black mold and a lack of running water. She also "shared personal information raising concerns for the child to be placed with her."

The department again asked the parents about their Indian ancestry on December 7, 2020, and again both parents denied any Indian ancestry.

Riverside County Superior Court Judge Donal B. Donnelly held a jurisdiction and disposition hearing on December 21, 2020. The judge found the department conducted a sufficient inquiry regarding whether J.C. had Indian ancestry, and ICWA didn't apply. The judge also sustained the allegations in the petition and ordered reunification services for the parents.

In January 2021 the department contacted a maternal cousin who lived out of state to assess them for possible placement. The cousin eventually withdrew from consideration.

On April 21, 2021, the department again asked the parents whether they had any Indian ancestry, and they again responded they had no knowledge of any Indian ancestry in their families. The parents also said they would provide information about another family member for the department to assess for possible placement, but never did.

Riverside County Superior Court Judge Kelly L. Hansen held a six-month status review hearing on June 15, 2021. He found that ICWA didn't apply as there was no new information to suggest it did. He also terminated reunification services and set a 366.26 hearing.

On December 21, 2021, the judge terminated mother's and father's parental rights. Mother appealed.

## II.

## ANALYSIS

Mother argues the department failed to conduct a sufficient inquiry into whether ICWA applied to J.C., and the judge erred in concluding otherwise. We agree.

"[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if

4

any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314 (*A.M.*).)

ICWA requires that " '[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and of their right of intervention.' [Citation.] This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 5.) "There are two separate ICWA requirements which are sometimes conflated: the obligation to give notice to a tribe, and the obligation to conduct further inquiry to determine whether notice is necessary. Notice to a tribe is required, under federal and state law, when the court knows or has reason to know the child *is* an Indian child." (*A.M.*, *supra*, 47 Cal.App.5th at p. 315.) In order to determine whether such notice is necessary, California law states, "[t]he court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) Though federal law obligates courts to conduct this inquiry, California state law goes further by imposing this obligation on social services agencies as well. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742 (*Benjamin M.*).)

" 'The child welfare department's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." ' " (*In re J.S.* (2021) 62 Cal.App.5th 678, 686 (*J.S.*); see § 224.2, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, aunts, uncles, brothers, sisters, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

The law requires further inquiry only " 'when "the court, social worker, or probation officer has reason to believe that an Indian child is involved [or, under Cal. Rules of Court, rule 5.481(a)(4), 'may be involved'] in a proceeding . . . ." ' " (*J.S.*, *supra*, 62 Cal.App.5th at p. 677.) " 'When that ["reason to believe"] threshold is reached, the requisite "further inquiry" "includes: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe." ' " (*Ibid.*) Thus there are two types of inquiry relevant entities are required to conduct: an initial inquiry, which is always required, and a further inquiry, which is required only when the relevant entity has reason to believe an Indian child is or may be involved in the proceeding.

Mother argues the department failed at the first step, the initial inquiry, because they only asked her and father about potential Indian heritage and failed to ask any other family members. She points out the department actually contacted maternal grandmother and a maternal cousin but didn't ask them about J.C.'s potential Indian ancestry and made no effort to contact any paternal relatives. For their part, the department concedes they didn't ask any extended relatives about J.C.'s Indian status, despite the fact section 224.2, subdivision (b), requires social workers to interview extended family members about whether a child has Indian ancestry.

We agree with mother that this was error. (*In re Darian R.* (2022) 75 Cal.App.5th 502, 509 (*Darian R.*), petn. for review prematurely filed Mar. 28, 2022, time for grant or denial of review extended to June 27, 2022.) The question becomes whether the error is prejudicial. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.) In the ICWA context, error is prejudicial "where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.)

Such is the case here. There is no dispute that the maternal grandmother and at least one maternal cousin have readily obtainable information likely to bear on J.C.'s Indian status. The department was actively in contact with both at various times during the dependency, and simply failed to ask either about J.C.'s potential Indian status. Nor can the department claim their failure to ask these family members is harmless because

7

they were unlikely to have information showing J.C. had Indian heritage. "Speculation as to whether extended family members might have information likely to bear meaningfully on whether the child is an Indian child has no place in the analysis of prejudicial error where there is an inadequate initial inquiry. Rather, in determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 (*Antonio R.*)) For these reasons, "[w]here the [d]epartment fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances, as here, prejudicial and reversible." (*Ibid.*) In short, the department has not provided any reason why they did not seek information from extended family members, and there is good reason to believe the information would be relevant. Therefore, the department's failure to obtain the information was prejudicial.

The department argues the error was not prejudicial because both parents denied having any Indian ancestry at least three times. However, section 224.2, subdivision (b), "requires the [d]epartment to ask, as part of its initial duty of inquiry, extended family members (including the biological grandparents) whether the child is or may be an Indian child," and nothing "relieves the [d]epartment of its broad duty to seek that information . . . simply because a parent states on the ICWA-020 form . . . 'I have no

Indian ancestry as far as I know.' " (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554 (*Y.W.*).) "Such a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Id.* at p. 554.) Moreover, the department's "position ignores the express obligation that section 224.2, subdivision (b), imposes on the [d]epartment to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry." (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 431.) Indeed, this duty to inquire regardless of the parents' statements is especially important here, where father was apparently removed from his biological parents and therefore was unlikely to have detailed information regarding his biological heritage. (See, e.g., *Y.W.*, at pp. 554-555 [concluding the department prejudicially erred where they interviewed the mother's adoptive parents but failed to investigate her biological family].)

The department also argues this case is similar to two others, *In re S.S.* (2022) 75 Cal.App.5th 575 (*S.S.*) and *Darian R.*, *supra*, 75 Cal.App.5th 502, both of which found the department's failed inquiry wasn't prejudicial. These cases are distinguishable.

In *S.S.*, the father was never identified but the maternal grandmother was an active participant in the proceedings and made a concerted effort to have the child placed with her. (*S.S.*, *supra*, 75 Cal.App.5th at p. 582.) The court determined that if the maternal grandmother had information suggesting the child had Indian heritage, it would've been in her interest to disclose that information as "[u]nder ICWA, when an Indian child is the subject of foster care or adoptive placement proceedings, 'preference shall be given, in the absence of good cause to the contrary, to a placement with . . . [¶] . . . a member of

9

the Indian child's extended family.' " (*Ibid.*) Given this, the court concluded that the maternal grandmother's silence on the child's Indian status indicated she didn't have any relevant information regarding the child's Indian heritage, and the department's failure to ask her was harmless. (*Ibid.*)

Here, the department had contact with father but made absolutely no effort to speak to any of his family. This immediately distinguishes the two cases. In addition, though the maternal grandmother and maternal cousin were interviewed for placement, neither had an obvious incentive to disclose information about J.C.'s Indian heritage without being asked. Maternal grandmother told the department her home wasn't suitable and disclosed personal information which made the department reticent to place the child with her. Thus, from this record, it is not at all clear that maternal grandmother was actively interested in having J.C. placed with her or whether that was even a viable option. Meanwhile maternal cousin voluntarily removed herself from consideration for placement. There is therefore no reason to believe either maternal relative was incentivized to affirmatively disclose any knowledge of J.C.'s Indian status, as there was in *S.S.*

In *Darian R.*, both parents claimed their children didn't have any Indian ancestry, and the department never asked the maternal relatives they had contact with about the child's Indian status. (*Darian R.*, *supra*, 75 Cal.App.5th at pp. 505-506.) However, in that case there was a previous dependency concerning the parents' other children in which the court found ICWA did not apply. The parents did not challenge this finding. (*Id.* at

10

pp. 509-510.) The court also found relevant that the mother lived with the identified maternal extended relatives and concluded this meant these relatives were unlikely to have information the mother didn't have herself. (*Id.* at pp. 509-510.)

Here, unlike in *Darian R.*, no prior ICWA finding exists. This alone renders *Darian R.*'s guidance of limited use. Meanwhile, while there is some evidence mother lived with certain identified maternal relatives in this case, it is undisputed the identified maternal cousin didn't live with mother, and there is no evidence the parents ever lived with any paternal relatives. Therefore, even assuming the parents' cohabitation with some extended family members is relevant, the nature and extent of that cohabitation is substantially different here than in *Darian R.*

Accordingly, we conditionally reverse the order terminating parental rights to permit the department to complete its initial inquiry. On remand, the department should inquire about J.C.'s Indian status with, at minimum, the maternal grandmother and maternal cousin with whom the department was previously in contact. The department should also contact the paternal side of the family, including but not limited to father's biological parents, or else explain what efforts they made to do so and why those efforts failed.

III.

DISPOSITION

We conditionally reverse the order terminating parental rights. We remand the matter to the juvenile court judge with directions to order the department to comply with

11

the inquiry provisions of ICWA and of sections 224.2 and 224.3 (and, if applicable, the notice provisions as well) by interviewing any extended family member—maternal or paternal—with information likely to bear meaningfully upon whether the child is an Indian child. If, after completing the initial inquiry, neither the department nor the judge has reason to believe the child is an Indian child, the judge shall reinstate the order terminating parental rights. If the department or the judge has reason to believe the child is an Indian child, the judge shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

12